UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:08CV-96-M

ALBERT WILLIAM BARBER, III                                      PLAINTIFF

v.

KEITH CAIN, Sheriff of Daviess County,
Kentucky and DAVID UNDERHILL, Deputy
Sheriff of Daviess County, Kentucky                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendants, Keith Cain and David Underhill, for summary judgment [DN 21].  Fully briefed, this motion is ripe for decision.

### I.  SUMMARY JUDGMENT STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "specific facts showing there is a

genuine issue for trial." Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

## II.  FACTUAL BACKGROUND

The facts of this case are relatively straightforward and not generally disputed.  The plaintiff, Albert William Barber, III ("Barber"), takes issue with certain security measures that have been implemented at the Holbrook Judicial Center ("Judicial Center")[1] located in Daviess County, Kentucky.  The security measures in question were initially implemented on July 23, 2003 by order of the chief circuit and district judges.  Under the policy, all persons entering the Judicial Center, unless exempt,[2] are required to pass through a magnetometer in order to gain entry into the facility.  If the magnetometer signals the presence of metal, the individual passing through must empty his or her pockets and make a second pass through the machine.  If the magnetometer again signals the presence of metal, the individual must consent to a pat-down search before entering the facility.  In addition, any packages or briefcases that could contain a weapon must pass through an x-ray machine.  Notice of these requirements are posted throughout the Judicial Center.

Barber alleges that the policy violates the Equal Protection Clause because it arbitrarily draws a distinction between certain classes of visitors to the Judicial Center.[3]  In addition to arguing

---

[1]     The Judicial Center is the courthouse for Kentucky's Sixth Judicial Circuit and District courts.

[2]     Among those that are exempt are uniformed police officers showing proper identification and Judicial Center employees displaying a swipe card.

[3]     Pursuant to Kentucky law, the sheriff or his deputies, such as the defendants herein, are responsible for providing security services to the courts and its facilities,  KRS 23A.090, and in doing so, they are required to "obey the orders of said courts . . . ."  KRS 70.140.  Therefore, the defendants are obligated by state law and by order of the circuit and district judges, to implement

2

that the policy itself is unconstitutional, he also argues that the defendants are administering the policy in a discriminatory fashion. He argues that the defendants have the ability to exercise their discretion and exempt regularly practicing attorneys from these search requirements, but they have declined to do so. Further, Barber alleges the defendants are violating the policy by allowing non-uniformed peace officers to enter the facility without showing identification while rigidly enforcing the policy against attorneys and other members of the public. Barber contends that if peace officers and employees of the Judicial Center are exempted, so too, should attorneys.

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must establish "both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted).

### A. CONSTITUTIONALITY OF POLICY

The policy in question draws a distinction between various classes of visitors to the Judicial Center. Peace officers and employees with swipe cards are generally exempt from the search requirements. However, attorneys and other members of the public are not exempt. Barber argues, and possibly rightly so, that the Judicial Center is not made any safer by requiring attorneys to be searched, while at the same time, allowing any individual displaying a blank swipe card to bypass the security procedures. However, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313

---

this policy.

(1993).[4]

To be sure, the defendants would not be permitted to search only members of a suspect class while exempting all other visitors from the security requirements.   But where, as here, a "classification . . . neither proceeds along suspect lines nor infringes fundamental constitutional rights[,]" it "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. (citing Sullivan v. Stroop, 496 U.S. 478, 485 (1990)).  Where there are "plausible reasons" for such a classification, the Court's "inquiry is at an end."  Id. at 313-14 (citing U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980)).  This constitutional framework allows "improvident decisions" to be "rectified by the democratic process[,]" id. at 314 (quotation omitted), and only permits judicial intervention where there is at least "some reason to infer antipathy," id. (quotation omitted).

A court's review is even more constrained where the classification occurs due to the necessity of "line-drawing."  Id. (citation omitted).  "Defining the class of persons subject to a regulatory requirement–much like classifying governmental beneficiaries–inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line . . . ." Id. at 315-16 (internal quotation and markings omitted).  An equal protection challenge to such a classification would only succeed if the plaintiff could "'negative every conceivable basis which might support the classification.'"  Id. at 315 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356 (1973)). Barber has not come close to meeting his burden and provides only conjecture and speculation as to the impropriety of the classification system.

---

[4]      Barber's concerns about the provisions of the policy and the effectiveness of it are better directed to the judges who make the policy.

4

Other courts, when confronted with equal protection challenges to courthouse security policies, have come to similar conclusions: such security schemes are "rationally related to a legitimate governmental purpose, *viz.*, the protection of the Courthouse from violence." Klarfeld v. United States, 944 F.2d 583, 583 (9th Cir. 1991). Those courts have also rejected suggestions that the courthouses should set up special exemptions for attorneys: "[t]o implement such a procedure for all attorneys, or simply those who might want to enter the courthouse at some time, would result in a severe administrative burden out of all proportion to the benefit of forgoing a second trip through the magnetometer. Such precautionary measures are not at all irrational." Id. Because Barber has failed to negative every conceivable basis which might support the classification, the Court's inquiry must end. The security policy is constitutional on its face.

### B. ADMINISTRATION OF POLICY

Barber also contends that the policy, even if constitutional on its face, is administered in a discriminatory manner. He has certainly established that the defendants, pursuant to the policy, have the discretion to exempt regularly practicing attorneys from the search requirements and that they have refused to do so. He has also established that on at least one occasion, the defendants have permitted non-exempt peace officers to bypass security in direct contravention of the policy. But that is all Barber has shown which is insufficient to establish an equal protection violation.

The "[s]elective enforcement of a facially constitutional regulation does not, by itself, violate equal protection." Wright v. MetroHealth Med. Ctr., 58 F.3d 1130, 1137 n.7 (6th Cir. 1995). Instead, "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful*

5

*discrimination*." Snowden v. Hughes, 321 U.S. 1, 8 (1944) (emphasis added); see also Birth Control Ctrs., Inc. v. Reizen, 743 F.2d 352, 359 (6th Cir. 1984) ("In order to establish selective enforcement . . . that rises to the level of a violation of their equal protection rights, the plaintiffs must prove intentional, purposeful discrimination."). "[A] discriminatory purpose is not presumed," id., but instead, "there must be a showing of 'clear and intentional discrimination,'" id. (quoting Gundling v. City of Chicago, 177 U.S. 183 (1900)). This, in turn, requires the plaintiff to establish that "'the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" Wright, 58 F.3d at 1137 n.7 (quoting FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d Cir. 1992)). But Barber has presented no evidence of discriminatory animus.

Barber contends that Stemler v. City of Florence, 126 F.3d 856 (6th Cir. 1997) supports his claim. In Stemler, the plaintiff argued that she was arrested and prosecuted for driving under the influence merely because the defendants perceived her to be a lesbian. 126 F.3d at 860. Concluding that the plaintiff stated a valid claim, the Sixth Circuit held that "under the Equal Protection Clause . . . the state may not choose to enforce even facially neutral laws differently against different portions of the citizenry solely out of an arbitrary desire to discriminate against one group." Id. at 874. But Stemler is inapplicable. Barber does not contend that the classification system was created only to discriminate against him as an attorney or because he is a member of a politically unpopular group. Barber merely contends that the classification system is unwise, which as discussed, does not state a valid claim under the Equal Protection Clause. Therefore, his selective enforcement

claim also fails.[5]

## IV.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion by the defendants, Keith Cain and David Underhill, for summary judgment [DN 21] is **GRANTED**.  A judgment will be entered consistent with this Memorandum Opinion.

cc:      Counsel of Record

---

[5]      It appears that Barber has waived his other Constitutional and state law claims.  He has not responded to the defendants' motion as to those claims, and in his brief, he states that "the crux of Plaintiff's argument is one of equal protection, or more importantly, selective enforcement of the procedures and laws related to security in that some are patted down and searched while others are not."  (Barber's Resp. at 1.)  It is the non-moving party's burden of demonstrating a genuine issue of fact for trial after the moving party has demonstrated the lack of a genuine issue of fact.  <u>Anderson</u>, 477 U.S. at 247-48.  Barber has not done so.  Therefore, the Court finds that summary judgment is also appropriate as to these additional claims.